FILED IN CHAMBERS
U.S.D.C. Rome

FEB 26 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

DOUGLAS BURLEY,

      Plaintiff,

  v.

WARDEN STEVE UPTON, et al.,

      Defendants.

CIVIL ACTION

NO. 4:05-CV-214-RLV

O R D E R

In this action, brought pursuant to 42 U.S.C. § 1983, the plaintiff, who is currently incarcerated at Calhoun State Prison, alleges that his civil rights were violated when prison officials were deliberately indifferent to his serious medical needs while he was incarcerated at Hayes State Prison; specifically he contends that prison officials did not provide him with a lower bunk and that as a result he fell and injured his back as he was climbing down from the upper bunk. Pending before the court is the defendants' Motion for Summary Judgment [Doc. No. 39].[1]

---

[1] The motion is actually brought by Warden Steve Upton, Chief Counselor Mark Abusaft, and Officer Donna Simpson. The plaintiff recently amended his complaint to add Officer Tammy Thompson as a defendant. (He had previously named two Doe defendants.) Officer Thompson did not serve her answer until February 16, 2006. Since Officer Thompson was not a defendant at the time the motion for summary judgment was filed, she is technically not a party to the motion. However, the motion itself referred to "defendants," and the party later identified as Officer Thompson was referred to in the motion. The court finds that judicial economy would not be served by requiring Officer Thompson to file a separate motion for summary judgment, since all the arguments made in the current motion (and the plaintiff's response to that motion) are equally applicable to Officer Thompson.

I. FACTUAL BACKGROUND

In his amended complaint the plaintiff alleges that on September 13, 2004, he was told to return to his housing unit because he was being moved.[2] When he arrived at his unit, Officer Thompson told him that he was being moved from a bottom bunk in the T.V. room to a top bunk in cell 121, because the inmate in the top bunk in cell 121 had a medical profile specifying that he be in a bottom bunk. When the defendant informed Officer Thompson that he also had such a medical profile, she informed him that he would have to move temporarily since she had already made out the paper work. One of the plaintiff's cellmates also pointed out to Officer Thompson that the plaintiff required a bottom bunk, but Officer Thompson still insisted that the plaintiff move.

About 20 minutes later, the plaintiff informed Chief Counselor Mark Abusaft about his need for a bottom bunk. Counselor Abusaft informed the plaintiff that he had 20 inmates moving to another unit the next day and that he would provide a bottom bunk for the plaintiff at that time. On the same day, the plaintiff submitted a letter to the warden, informing him of the improper move.

---

[2] This recitation of the facts is drawn from the plaintiff's complaint. The defendants dispute many of the factual allegations, and the court will note some of those disputes later in this order. Although this case is before the court on a motion for summary judgment, not a motion to dismiss, the court will, in view of the plaintiff's pro se status, construe the facts in the light most favorable to the plaintiff. As discussed below, the court holds that the plaintiff has failed to show a constitution violation even if the facts are construed in his favor.

2

On September 15, the plaintiff was still in cell 121. He spoke to the warden, who informed the plaintiff that he was aware of the situation and that he would take care of it. On September 17, the plaintiff was still in cell 121. He saw the warden and tried to speak with him about the situation, but Officer Simpson refused to allow that communication, telling the plaintiff that the warden was aware of the situation and did not see a need to move the plaintiff immediately.

On the afternoon of September 17, Officer McCurry told the plaintiff that he would be switching bunks with an inmate in the T.V. room as soon as that roommate returned from his detail. A short time later, when the plaintiff inquired about the move, Officer McCurry told him that he could not be moved until he got a move slip. Even though it was Officer Thompson's responsibility to get a move slip for the plaintiff, she failed to do so.

On September 18, the plaintiff still had not been moved. On that day, the plaintiff was climbing down from his bunk, when he fell, injuring his head and back.

The defendants admit that the plaintiff was assigned to a top bunk on September 18 even though he had a medical profile requiring that he be placed in a lower bunk. The defendants contend that the plaintiff did not fall from the upper bunk and that incident was fabricated. However, the defendants further concede that the plaintiff informed the medical staff on September 18 that he had

fallen from an upper bunk and had increased back pain.[3]  The defendants dispute that the plaintiff actually fell because the examination by the prison nurse noted no swelling, no deformity, no heat, no crepitus with movement, no discoloration, full range of movement, normal vital signs, and ability to flex neck to chest.[4] Nevertheless, for the purposes of the summary judgment motion, the court assumes that the plaintiff did, in fact, fall on that day.

On September 27, the plaintiff submitted an informal grievance, in which he stated, "In spite of a bunk profile, I was left on a top bunk for a week resulting in me falling from the top bunk causing injury to my head and back."  That grievance was received on September 28.  On September 30, the grievance was denied; the reason given was, "Grievance filed out of time as outlined in policy."[5]  Even if, as asserted by the defendants, the

---

[3] The plaintiff had had a three-year history of lower back pain prior to September 18.

[4] Following this examination, Dr. Sanford prescribed Motrin and returned the plaintiff to his cell.  The court notes that the plaintiff's allegation of deliberate indifference to his serious medical needs relates only to placing him in a top bunk; the plaintiff does not contend that the treatment following his fall was inadequate in any way.

[5] On several occasions the defendants state that the grievance was backdated.  However, they offer no proof of this.  It does appear that the date originally written on the grievance was "9.18.04," which was the date of the incident  At the top of the grievance appears the following: "Date  9.18.04 ."  Later, after the words "Date of Incident" are the numbers "9.18.04."  Finally, on the  signature line for the grievant, there is a line for "Date," and the numbers "9.18.04" appear above that line.  However, someone has superimposed the number "27" over the number "18." From all this, the court does not infer that the plaintiff "backdated" his grievance.  Rather it appears that he simply put

plaintiff backdated his grievance to September 18, it was still timely when it was received on September 28. The regulations in effect at the time the plaintiff submitted this grievance provided that a grievance had to be submitted within 10 days of the occurrence. *See* Department of Corrections Standard Operating Procedures, Reference No IIB05-0001, Paragraph VI.B.5, effective June 1, 2004. Thus, the grievance was improperly denied.

Despite the fact that grievance was improperly denied, the plaintiff did not avail himself of the appeal process provided by the Department of Corrections's grievance procedure, whereby an inmate must initiate the formal grievance procedure if his informal grievance is denied. *See* Department of Corrections Standard Operating Procedures, Reference No IIB05-0001, Paragraph VI.C, effective June 1, 2004. Instead, he chose to write letters on October 2, October 15, and November 22, objecting to the rejection of his informal grievance. Thus, the plaintiff did not properly avail himself of the grievance procedure instituted by the Department of Corrections.

## II. LEGAL DISCUSSION

As an initial matter, the court notes that the plaintiff has sued the defendants in their individual and official capacities. A suit against a person in his official capacity is essentially a

---

the incorrect date on the signature line and that someone corrected that date. Also, because the grievance was timely submitted, any claim of backdating by the defendants is irrelevant.

suit against the governmental entity itself. Kentucky v. Graham, 473 U.S. 159, 105 S.Ct. 3099 (1985). States and governmental entities that are considered arms of the state are not "persons" within the meaning of section 1983.[6] Will v. Michigan Department of State Police, 491 U.S. 73, 109 S.Ct. 2304 (1989). Under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 388, 97 S.Ct. 568 (1977), this court looks to the state's characterization of its departments and agencies to determine if such departments and agencies are deemed to be arms of the state. *See also* Robinson v. Georgia Department of Transportation, 966 F.2d 637 (11th Cir. 1992)(holding that the Georgia Department of Transportation is an arm of the state). The Georgia Department of Corrections is an arm of the state and is, therefore, not a person within the meaning of section 1983. McBride v. Board of Corrections, 221 Ga. App. 796 (1996).

Since the plaintiff failed to fully utilize the grievance procedure with respect to his claim regarding the failure to move him to a cell with a lower bunk, his claim is barred by 42 U.S.C. § 1997e(a), which provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,

---

[6] The defendants also assert Eleventh Amendment immunity. That is an issue this court need not address. Because the state cannot be sued under section 1983, the issue of immunity (and whether it has been waived) for such claims is not implicated at all.

or other correctional facility until such administrative remedies as are available are exhausted."

However, even if the court should determine the plaintiff's follow-up letters to his informal grievance constituted an appeal and that he thereby exhausted his administrative remedies, the court would still conclude that he is not entitled to relief under section 1983.

The defendants have raised the defense of qualified immunity. The United States Supreme Court has set forth a two-part test for the qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002); *see also* Saucier v. Katz, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'", Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002), quoting *Saucier*, 533 U.S. at 201. Thus, the court must first analyze whether the defendants' conduct, taken in the light most favorable to the plaintiff, violated his constitutional rights.

7

Not every governmental action affecting the well-being of a prisoner is subject to Eighth Amendment scrutiny. After incarceration, only the "unnecessary and wanton infliction of pain" constitutes the kind of cruel and unusual punishment forbidden by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (1976). *Estelle* specifically held that deliberate indifference to a prisoner's serious medical needs could constitute cruel and unusual punishment.

In Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986), the Supreme Court made clear that mere negligence in dealing with a prisoner's medical needs would not be actionable under section 1983.

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishments Clause. . . ."

*Id.* at 319, 106 S.Ct. at 1084.
The Eleventh Circuit has elaborated on that standard: "[A]n official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir.1997). *See also* Mandel v. Doe, 888 F.2d 783, 788 (11th Cir.1989) ("knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

8

Of course, to prevail on a section 1983 claim alleging deliberate indifference, a plaintiff must show that such deliberate indifference was the cause of his injury. Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003); Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995).[7]

In this case, the plaintiff never explicitly states why he had medical profile for a lower bunk. The court infers from the record before it that the medical profile was given because of the plaintiff's history of lower back pain. Obviously, climbing to an upper bunk might exacerbate that pain. The plaintiff does not allege that the defendants moved him to an upper bunk simply to cause him pain. The move apparently was made in error, and the defendants agreed that the plaintiff should be moved back to a lower bunk. The court finds that the delay in moving the plaintiff does not constitute the kind of deliberate indifference to serious medical needs contemplated by the Supreme Court and the Eleventh Circuit. Moreover, the court notes that the plaintiff was injured when he fell. He does not state the circumstances that actually caused him to fall. Granted, the plaintiff might not have fallen if he had not had to climb to the upper bunk, but the medical profile was given, presumably, to keep the plaintiff from suffering

---

[7] Both of these cases dealt with situations where the jail officials were alleged to have been deliberately indifferent to the risk of harm from other inmates. However, this court sees no difference in deliberate indifference to harm from other inmates and deliberate indifference to serious medical needs with respect to causation. Indeed, the sine qua non of a tort is that person's actions must have caused the injury.

pain whenever he climbed; it does not appear to have been given for the purpose of insuring that the plaintiff did not fall. In other words, there is no causal connection between violating a medical profile given for the purpose of alleviating pain from climbing and any injury occasioned by a fall resulting from climbing.

Moreover, even though the court recognizes that degenerative disc disease can be painful, the court finds that being permitted to sleep on a lower bunk does not constitute a serious medical need. This is especially true in this situation where prison officials agreed that the plaintiff was to be moved to a lower bunk as soon as practical.

For the foregoing reasons, the court GRANTS the defendants' Motion for Summary Judgment [Doc. No. 39]. The clerk will enter judgment dismissing the plaintiff's claims against all defendants with prejudice.

SO ORDERED, this 26TH day of February, 2007.

/s/ Robert L. Vining, Jr.
ROBERT L. VINING, JR.
Senior United States District Judge